**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CEDRIC CAL (B-54397), | ) | |
| | ) | |
| Petitioner, | ) | Case No. 14-cv-3834 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| WARDEN STEPHANIE DORETHY, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Cedric Cal ("Petitioner") is incarcerated at Hill Correctional Center. He brings this habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his conviction in the Circuit Court of Cook County. For the reasons explained below, the Court denies the petition. However, pursuant to 28 U.S.C. § 2253(c)(2), the Court grants a certificate of appealability as to Claim 1. The Court directs the Clerk to enter judgment against Petitioner and in favor of Respondent. Civil case terminated.

## I.    Background

The following facts are drawn from the state court record, which Respondent has submitted in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases. See [51]. The state court findings of fact are presumed correct, and Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 n.8 (2015) (citing 28 U.S.C. § 2254(e)(1)).

Petitioner and his codefendant Albert Kirkman ("Kirkman") were charged in the Circuit Court of Cook County with the first degree murders of Cedric Herron ("Herron") and Sammy Walker ("Walker") and the attempted murder and aggravated battery with a firearm of Willie Johnson ("Johnson"). Petitioner and Kirkman were tried in a joint jury trial.

Johnson testified at the trial. According to Johnson, on the afternoon of April 21, 1992, his sister Latanya came home crying. Johnson went outside to confront his neighbor, Keith Ford ("Ford"). Johnson found Ford standing outside of his house with five other men, including "Duke." Johnson had a physical altercation with some of the men and then returned home. Around 10:00 p.m. that night, Johnson testified, he was standing in his yard with Herron and Walker when Duke and a second man approached, both armed with guns. Johnson saw "the motion of pointing a gun" and he "just laid down and hit the ground." [51-2] at 50. Herron and Walker were hit by gunfire and died at the scene. Johnson was hit with nine bullets but survived.

Detective Michael Miller testified that he first spoke to Johnson in the emergency room while Johnson was being prepared for surgery following the shooting. Johnson described the two shooters, identified one of them as Duke, and provided details about Duke's house and car. A few hours later, Kirkman and Petitioner were apprehended, and Miller returned to the hospital to show Johnson their photographs. Johnson identified Kirkman and Petitioner as the shooters, noting that Kirkman went by the nickname Duke. At trial, Johnson again identified Kirkman and Petitioner as the shooters.

Petitioner and Kirkman were convicted of all charges. The Illinois Appellate Court affirmed Petitioner's convictions and the Illinois Supreme Court denied leave to appeal. Petitioner is currently serving a sixty-year prison sentence.

Since his conviction, Petitioner has filed four post-conviction petitions in Illinois state court.[1] Only the third petition, filed in 2009, is at issue here. See [51-24] at 1 *et seq*. In it, Petitioner

---

[1] The original petition and the first successive petition were both dismissed. The fourth petition successfully argued that Petitioner's original sentence of mandatory life without parole, imposed while he was a juvenile, violated the Eighth Amendment and the U.S. Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012). That petition resulted in the reduction of Petitioner's sentence on the two counts of first-degree murder from mandatory life without parole to 60 years. See [49] at 12.

asserted a claim of actual innocence based on newly discovered evidence. That evidence consisted primarily of an affidavit from Johnson, signed in 2009, in which Johnson recanted his identification of Petitioner and Kirkman as the shooters and instead identified Ford and an unknown accomplice. According to the affidavit, Ford "was a Regent for the Gangster Disciples" who "ran the drug trade on North Harding." [51-24] at 32. Both Johnson and Herron were members of a rival gang, the Insane Vice Lords, and sold drugs on the street. *Id*. at 31. Kirkman lived down the block and was known to Johnson as a Conservative Vice Lord. *Id*. The day before the shooting, Johnson found Kirkman and Petitioner selling drugs in front of his house and confronted them, robbing them of their drugs and money. *Id*. Johnson's sister Latanya and girlfriend Latrese Buford ("Buford") witnessed the altercation, and the next night told police that Petitioner and Kirkman were the likely shooters. *Id.* at 34. Johnson "just rolled with it" and identified Petitioner and Kirkman because he "was still pissed that they were taking over [his drug] spot" and wanted to "get[ ] back at them." *Id*. at 35. Johnson did not tell police that Ford was one of the shooters because he "wanted to take care of it in the streets" and retaliate against Ford for killing his best friend Heron. *Id*.

The Illinois trial court granted Petitioner leave to file the third petition and held an evidentiary hearing at which Johnson, Buford, and Lillian Rivera ("Rivera") testified. Johnson testified that after a police officer at the hospital showed him photographs of Petitioner and Kirkman, he identified them as the shooters because he "didn't like them." [51-26] at 89. When asked why he did not name Ford as the real perpetrator, Johnson said, "my mother had already started receiving silent calls and guys was following my mother around and my sister was being threatened," and claimed that "the things I said I said out of fear, you know, for my life as well as my sister's and my mother." *Id.* at 90. Johnson also testified that, before signing his affidavit, he

spoke with Ray Ray Longstreet, a "very high ranking" Vice Lord who had the authority to tell Johnson what to do before Johnson "retired" from the gang sometime earlier. [51-26] at 136-39. Longstreet "gave [Johnson] the green light" to recant his trial testimony, telling him that "he had [Johnson's] back." *Id.* at 136. Johnson testified that Longstreet's phone call was "the only reason, Judge, I'm here." *Id.*

Buford testified at the hearing that she told detectives only that she heard gunshots, but "[d]idn't know anything" else. [51-26] at 205. According to Buford, Johnson told her that "Duke and Cal" were the shooters. *Id*. at 210. Rivera testified that Ford visited her on the night of the shooting around 9:30 p.m., staying for an hour. [51-26] at 252. Ford was accompanied by a second person, who was neither Petitioner nor Kirkman. *Id.* at 252-53.

Following the hearing, the trial judge determined that Johnson's recantation was not credible, and therefore not material. Thus, the judge denied post-conviction relief. See [51-26] at 350. The trial judge found Johnson's testimony internally inconsistent and implausible. Among other things, the trial court determined that it was improbable Johnson was receiving threatening telephone calls while in the emergency room, see *id.* at 346, and Johnson identified conflicting motives for failing to identify Ford immediately after the shooting, *id.* at 347. The trial court also determined that Petitioner's original identification of Petitioner and Kirkman, which Petitioner made when he "thought he was going to die [and] his family was threatened" [51-26] at 346, was reliable. By contrast, the trial court found, Longstreet's phone call to Johnson provided Johnson a motive to lie in his 2009 affidavit. According to the trial court, "[n]one of the circumstances of that phone call, how it originated, seems to indicate that it was done for any reason other than to his alliance and his loyalty with th[e] continuing criminal enterprise" of the Vice Lords. [51-26] at 348.

The Appellate Court affirmed, concluding that the trial judge's rejection of Johnson's recantation was not manifestly erroneous. See *People v. Cal*, 2013 WL 6687252 (Ill. App. Dec. 17, 2013). The Illinois Supreme Court ultimately denied leave to appeal.

Petitioner subsequently filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner claims that: (1) his continued incarceration constitutes both a due process violation and an Eighth Amendment violation because he put forth a "truly persuasive" demonstration of actual innocence in state post-conviction proceedings; and (2) his continued incarceration constitutes a due process violation because his conviction rests solely on irredeemably unreliable evidence— namely, Johnson's now-recanted identification of Petitioner as one of the shooters. Petitioner requests that this Court grant his petition, vacate his conviction, and order the State to retry him within 60 days or release him. In the alternative, Petitioner requests an evidentiary hearing before this Court so that any additional factual record may be developed in order to determine *de novo* whether Petitioner's constitutional claims have merit.

## II.     Legal Standards

The Court's review of Petitioner's petition for writ of habeas corpus is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). "The statute significantly limits the scope of our review; habeas relief cannot be granted for persons in custody pursuant to a judgment of a state court unless the adjudication of the claim: '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Sims v. Hyatte*, 914 F.3d 1078, 1086-87 (7th Cir. 2019) (quoting 28 U.S.C. § 2254(d)(1), (2)). Petitioner frames both of his claims as (d)(2) challenges to the Illinois courts'

determinations of fact in post-conviction proceedings. See [49] at 16 (Claim 1); *id.* at 29-30 (Claim 2). "'Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "This is a daunting standard, but not insurmountable." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### III.    Analysis

**Claim 1: Petitioner's Conviction and Continued Imprisonment Violate the Due Process Clauses of the 5th and 14th Amendments as well as the 8th Amendment Because he is Actually Innocent**

Citing *Herrera v. Collins*, 506 U.S. 390 (1993), Petitioner contends that "the Supreme Court has recognized the potential cognizability of a 'free standing' habeas innocence claim under sufficiently compelling circumstances." [49] at 14. Petitioner argues that his situation "meets the high standard applicable to actual innocence claims raised in habeas proceedings, because the evidence of his actual innocence of the crime was 'truly persuasive' and the Illinois courts' refusal to credit this evidence was, accordingly, an unreasonable determination of the facts." *Id.* at 16 (citing 28 U.S.C. § 2254(d)(2)). According to Petitioner: "Johnson testified, under oath at a post-conviction evidentiary hearing, that he had lied at trial. Johnson's testimony was the only evidence that linked [Petitioner] to the shootings in this case. Moreover, Johnson provided a compelling explanation for why he lied at trial and why he felt safe coming forward with his recantation when he did. Thus, this case presents a situation in which the state courts, despite clear and convincing evidence that [Petitioner] was not one of the men who shot Willie Johnson, Cedric Herron, and Sammy Walker, refused to grant him a new trial." *Id.* at 16-17.

Respondent argues, among other things, that Petitioner's claim must fail because "*Herrera* expressly considered, and declined to find cognizable under the federal constitution, such a claim of actual innocence." [50] at 8. The Court agrees, and therefore has no choice but to deny Claim 1. In *Herrera*, the Supreme Court "flagged the possibility that actual innocence might be enough to justify collateral relief in a *capital* case on the theory that the execution of one who is actually innocent violates the Eighth Amendment." *Perrone v. United States*, 889 F.3d 898, 903 (7th Cir. 2018) (emphasis added) (citing *Herrera*, 506 U.S. at 405). "Apart from that potential exception, however, the Court's 'habeas jurisprudence makes clear that a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id.* (quoting *Herrera*, 506 U.S. at 404); see also *Lund v. United States*, 913 F.3d 665, 668 (7th Cir. 2019) ("The actual innocence exception is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits. Framing the exception as a gateway presupposes that a petitioner will have underlying claims separate from the claim that he is actually innocent. 'The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence.'" (quoting *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015)); *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018) ("To date, an assertion of actual innocence based on evidence post-dating a conviction has not been held to present a viable claim of constitutional error. The Court in *Herrera* assumed without deciding that the Eighth Amendment precludes the execution of a person who has demonstrated his actual innocence. But neither the Supreme Court nor this court has yet indicated that an actual innocence claim could, standing alone, support the issuance of a writ in a non-capital case.").[2]

---

[2] "The actual innocence gateway is narrow" and can be used to excuse procedural default only where the petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of

This is not a capital case. Nor is Petitioner raising actual innocence as a gateway to excuse procedural default. Rather, Petitioner brings a substantive claim for habeas relief based solely on actual innocence. The Supreme Court and the Seventh Circuit have not recognized such a claim, nor set forth a legal standard for evaluating a hypothetical claim—other than to say that "*[i]f the federal courts will recognize freestanding constitutional claims of actual innocence," the "evidence of innocence will need to meet an 'extraordinarily high' threshold" that is even higher than the standard applied to gateway claims. *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017) (emphasis added) (quoting *Herrera*, 506 U.S. at 392). This Court cannot grant habeas relief based on a claim that neither the Supreme Court nor the Seventh Circuit has recognized as cognizable. See, e.g., *Cole v. Pfister*, 2018 WL 1508483, at *9 (N.D. Ill. Mar. 27, 2018) (explaining that "courts in this Circuit recognize *Herrera* and routinely reject" freestanding claims of actual innocence (collecting cases)). Therefore, the Court must deny relief on Claim 1.

**Claim II: Petitioner's Conviction Violates the Due Process Clauses of the 5th and 14th Amendments in that His Conviction Rests Entirely on Unreliable, Perjured Evidence that is Insufficient to Support his Conviction**

In his second claim for relief, Petitioner asserts that "if this Court finds that Johnson's testimony at the evidentiary hearing was not sufficient to establish [Petitioner's] actual innocence, or if the Court chooses not to recognize a free-standing claim of actual innocence, this Court should grant federal habeas relief as [Petitioner's] conviction is now based solely on unreliable evidence, which is a violation of [his] 5th and 14th Amendment Due Process Rights." [49] at 28. According to Petitioner, "[r]egardless of which version of Johnson's testimony is credited, there is no question that he lied under oath at some point in this matter and that he has been convicted of perjury," and

---

the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Gladney*, 799 F.3d at 896 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). "Such new evidence can take the form of any 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Id* (quoting *Schlup*, 513 U.S. at 324).

"[c]ontinuing to incarcerate [Petitioner] based on this evidence and this evidence alone violates due process." *Id*.

The State responds that Petitioner's second claim is also barred by *Herrera*, because it is simply an "attempt to reframe his innocence claim under the guise of sufficiency-of-the-evidence." [50] at 8. The Court agrees that Claim 2 is not cognizable on habeas review. While Petitioner contends that his "due process claim is grounded in the principle that, when new information or subsequent proceedings reveal fundamental flaws in the trial process, a new trial [is] warranted," [54] at 19, he does not identify any precedent suggesting that, as a matter of federal due process, a prisoner must be released whenever evidence is presented in state post-conviction proceedings that, viewed in hindsight, undercuts the sufficiency of the evidence on which the petitioner was convicted at trial, even if the trial was not infected with any constitutional error.[3]

In essence, Petition asserts a modified *Jackson* claim. A *Jackson* claim challenges the sufficiency of the evidence supporting the habeas petitioner's conviction and is based on the principle that "Fourteenth Amendment due process requires that the state must present sufficient evidence to prove each element of an alleged crime." *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019); *see generally Jackson v. Virginia*, 443 U.S. 307, 319 (1987). In a *Jackson* challenge,

---

[3] The Court notes that Petitioner supports his theory of due process with two news article, a Third Circuit case, and an Illinois Appellate Court case, none of which mention habeas relief under section 2254. See [54] at 19 (citing John Schuppe, "Epic Drug Lab Scandal Results in More than 20,000 Convictions Dropped," *available at* https://www.nbcnews.com/news/us-news/epic-drug-lab-scandal-results-more-20-000-convictions-dropped-n747891 (last accessed 9/14/18); *U.S. v. Ciavarella*, 716 F.3d 705 (3d Cir. 2013) (detailing subsequent criminal prosecution of judges alleged to have received $2.8 million for helping to construct and operate juvenile detention centers and placing juvenile offenders there exchange); Associated Press, "Court Tosses Convictions of Corrupt Judge), https://www.cbsnews.com/news/court-tosses-convictions-of-corrupt-judge/ (last accessed 9/14/18); *People v. Sanchez*, 768 N.E.2d 99 (Ill. App. 2002) (defendant entitled to supplement appellate record with ARDC proceeding against defense counsel conducted after defendant's trial, where ARDC record revealed previously undisclosed level of addiction and illness dating back to defendant's trial that could have compromised attorney's professional abilities, there was no evidence that defendant or trial court was aware of information, and appellate court could not predict what impact information might have had on defendant's decision to retain attorney or decision of trial court to allow defendant to do so in spite of obvious conflict)).

the Court must determine "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson*, 443 U.S. at 319).[4] The Supreme Court in *Herrera* made clear, however, that "the sufficiency of the evidence review authorized by *Jackson* is limited to 'record evidence.'" *Hererra*, 506 U.S. at 402 (citing *Jackson*, 443 U.S. at 318). "*Jackson* does not extend to nonrecord evidence, *including newly discovered evidence*." *Id.* (emphasis added).

More generally, "'[n]o constitutional provision or federal law entitles a defendant to any state collateral review.'" *Jones v. Butler*, 778 F.3d 575, 586 (7th Cir. 2015) (quoting *Jackson v. Duckworth,* 112 F.3d 878, 880 (7th Cir. 1997)). Accordingly, "[u]nless state collateral review violates some independent constitutional right * * *, errors in state collateral review cannot form the basis of federal habeas relief." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996); see also *Resendez v. Smith*, 692 F.3d 623, 628 (7th Cir. 2012) ("that the State may have failed to comply with its post-conviction procedures would not raise a cognizable federal habeas claim"). Further, a petitioner "cannot 'transform a state-law issue' regarding alleged errors in his post-conviction proceedings 'into a federal one merely by asserting a violation of due process.'" *Shief v. Lashbrook*, 2019 WL 1773357, at *3 (N.D. Ill. Apr. 23, 2019) (quoting *Mishler v. Superintendent*, 2016 WL 1658672, at *5 (N.D. Ind. Apr. 26, 2016), and collecting cases).

---

[4] "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon*, 873 F.3d at 988. "In other words, it must be 'something like lying well outside the boundaries of permissible differences of opinion.'" *Rodriguez v. Gossett*, 842 F.3d 531, 538 (7th Cir. 2016) (quoting *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003); see also *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015). This standard is "difficult to meet" and "highly deferential." *Saxon*, 873 F.3d at 988 (internal quotation marks and citations omitted).

Petitioner's attempt to frame his second claim as one for violation of due process runs afoul of this precedent. In his state post-conviction proceedings, Petitioner used Illinois' Post-Conviction Hearing Act to assert a claim of actual innocence based on the Illinois Constitution. See [51-24] at 5-6. Petitioner contends that the Illinois courts erred in rejecting that claim, because their determination that Petitioner's "conviction should stand is based on the unreasonable determination that Johnson's trial testimony should be credited and remains reliable despite all that has followed and all that has been revealed." [49] at 29. The state courts' alleged errors in evaluating Petitioner's evidence and making credibility determinations do "not implicate a constitutional claim." *Jones*, 778 F.3d at 586 (holding that state prisoner's federal habeas claim, that state postconviction court should have held an evidentiary hearing concerning recantation by victim of attempted murder of victim's identification of prisoner as the shooter, did not involve a federal constitutional claim, as would be cognizable by federal habeas court; prisoner's claim instead involved state courts' decision that victim's recantation was not sufficiently credible to warrant an evidentiary hearing); see also, e.g., *Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016) (concluding that petitioner did not state a claim cognizable on federal habeas review by alleging that he did not receive a fair hearing on his state motion for postconviction relief, where petitioner did not allege the violation of some other, independent constitutional right in the way the state administered its postconviction proceedings); *Carter v. Superintendent*, 2011 WL 854875, at *24 (N.D. Ind. Mar. 8, 2011) (denying claim that "the state court violated his due process rights in connection with evidentiary rulings it made in the post-conviction proceedings" because "such errors do not implicate the legality of the petitioner's confinement" and are not cognizable). Therefore, Claim 2 is denied.

**IV. Certificate of Appealability**

As explained above, under controlling law the Court must deny the petition. However, it will issue a certificate of appealability as to Claim 1, pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011). An applicant makes a "substantial showing" where "reasonable jurists could debate whether … the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In support of his actual innocence claim (Claim 1), Petitioner has identified favorable facts suggesting that he may be innocent of the crimes for which he is currently incarcerated. Johnson was the only eyewitness who testified at Petitioner's trial; there was no physical evidence tying Petitioner to the shooting. Johnson has now recanted, and Petitioner's presentation of the facts suggests that the recantation may be reliable.

The petitioner in *Arnold*, 901 F.3d 830 (7th Cir. 2018), raised a similar set of facts. Arnold was convicted of sexually assaulting his minor son, based primarily on the son's trial testimony. *Id.* at 832. Several years later, the son signed an affidavit recanting his testimony and representing that he had falsely accused his father. *Id.* at 834. The state courts refused to grant Arnold a new trial and Arnold filed a federal habeas claim asserting actual innocence. *Id.* at 834-35. Unlike in this case, the petitioner asserted actual innocence both as a gateway to excuse procedural default (the running of the limitations period for filing a habeas claim) and as a substantive claim for habeas relief. *Id.* at 836. The district court concluded that the petitioner's claim of actual innocence could not excuse the running of the limitations period and denied his claim. *Id.* The

Seventh Circuit reversed, holding that the district court should have held an evidentiary hearing before rejecting the petitioner's claim. The court of appeals reasoned that "only after [the son] is heard and his credibility is evaluated can a court weigh the strength and reliability of the recantation against all of the evidence bearing on Arnold's guilt and determine whether Arnold has met the demanding *Schlup* standard" for gateway actual innocence claims. *Id*. at 840. If the district court concluded that the petitioner satisfied *Schlup*, then "[a]t that point, it [would] be necessary to consider whether his freestanding claim of actual innocence presents a viable claim for relief in habeas and what standard of proof Arnold would have to meet in order to prevail on that claim." *Arnold*, 901 F.3d at 842.

Unlike in *Arnold*, this case does not involve any claims of procedural default. Therefore the Court has reached "th[e] point" where it is "necessary to consider whether [Petitioner's] freestanding claim of actual innocence presents a viable claim" for relief under § 2254. *Arnold*, 901 F.3d at 842. The Court cannot say that Petitioner's claim is viable, because "neither the Supreme Court nor [the Seventh Circuit] has yet indicated that an actual innocence claim could, standing alone, support the issuance of a writ in a non-capital case." *Id*. at 847. Nonetheless, there is at least one opinion from the Seventh Circuit indicating that the viability of such a claim "remains open to debate." *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017) (citing *District Attorney's Office v. Osborne*, 557 U.S. 52, 71 (question remains open); *House v. Bell*, 547 U.S. 518, 554–55 (2006) (same); *In re Davis*, 557 U.S. 952 (2009) (mem.) (Stevens, J., concurring) (same); *Bradford v. Brown*, 831 F.3d 902, 917 n.7 (7th Cir. 2016) (Hamilton, J., dissenting) (same)). Therefore, the Court will grant a certificate of appealability to allow Petitioner the option of presenting to the Seventh Circuit and the Supreme Court his argument for "breaking new constitutional ground." *Id*.

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. See Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. See Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. See Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. See Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi).

## V.    Conclusion

For these reasons, the Court denies the petition but grants a certificate of appealability as to Claim 1, pursuant to 28 U.S.C. § 2253(c)(2). The Court directs the Clerk to enter judgment against Petitioner and in favor of Respondent. Civil case terminated.


Dated: December 26, 2019

_____
Robert M. Dow, Jr.
United States District Judge